**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

JENOBIA TALTON,                          *
                                         *
        Plaintiff,                       *
                                         *
vs.                                      *   CIVIL ACTION NO. 20-00543-B
                                         *
KILOLO KIJAKAZI,                         *
Acting Commissioner of Social            *
Security,[1]                             *
                                         *
        Defendant.                       *


## ORDER

        Plaintiff Jenobia Talton (hereinafter "Plaintiff"), seeks
judicial review of a final decision of the Commissioner of Social
Security denying her claim for a period of disability, disability
insurance benefits, and supplemental security income under Titles
II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*,
and 1381, *et seq.*  On November 5, 2021, the parties consented to
have the undersigned conduct any and all proceedings in this case.
(Doc. 18).  Thus, the action was referred to the undersigned to

_____

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security
on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal
Rules of Civil Procedure, Kilolo Kijakazi should be substituted
for Andrew Saul as the defendant in this suit. No further action
need be taken to continue this suit by reason of the last sentence
of section 205(g) of the Social Security Act, 42 U.S.C. 405(g).

conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

## I.    Procedural History[2]

Plaintiff filed her application for benefits on June 25, 2019. (Doc. 11 at 232). Plaintiff alleges that she has been disabled since June 24, 2018, due to high blood pressure, diabetes, multiple sclerosis, neuropathy, migraine headaches, arthritis, morbid obesity, depression, anxiety, and sleep apnea. (Id. at 247, 250).

Plaintiff's application was denied and, upon timely request, she was granted an administrative hearing before an Administrative Law (hereinafter "ALJ") on May 6, 2020. (Id. at 53). Plaintiff attended the hearing, via telephone conference, with her counsel and provided testimony related to her claims. (Id. at 63). In addition, a vocational expert ("VE") appeared, via telephone conference, at the hearing and provided testimony. (Id. at 80). On June 5, 2020, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 46). The Appeals Council denied Plaintiff's request for review on October 1, 2020. (Id. at

---

[2] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

15).  Therefore, the ALJ's decision dated June 5, 2020, became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action.  (Doc. 1).  The parties waived oral argument on November 4, 2021.  (Doc. 16).  This case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.   Issues on Appeal

1. **Whether substantial evidence supports the ALJ's assessment of the expert medical opinion evidence of Plaintiff's treating physicians, Dr. Walid Freij, M.D., and Dr. Glenton Davis, M.D.**

2. **Whether substantial evidence supports the RFC.**

## III.  Factual Background

Plaintiff was born on March 23, 1986, and was thirty-four years of age at the time of her administrative hearing on May 6, 2020.  (Doc. 11 at 53, 247).  Plaintiff completed high school and attended college, earning an RN nursing degree.  (Id. at 250, 1006).  Plaintiff reported that she had only one job in the fifteen years before becoming unable to work, that is, she worked as a home visit nurse for a home health company from 2010 to 2015.  (Id. at 252).

Plaintiff testified that she lives with her daughter, for whom she provides some care, and she manages her own personal care

needs, with some assistance.  (Id. at 66-67, 274).  She uses the computer, does light housekeeping, prepares simple meals, drives,[3] shops for groceries with her daughter, and can handle her own finances.  (Id. at 66-67, 274-77, 1007).  She attends church and spends time with others.  (Id. at 278, 1007).  She reported some problems with memory.  (Id. at 276).

## IV.  **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[4] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla,

---

[3] Plaintiff reported that she drives short distances because of problems with her sight and numbness.  (Doc. 11 at 277).

[4] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

V.   **Statutory and Regulatory Framework**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant

proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). At the fourth step, the ALJ must make an assessment of the claimant's RFC. See Phillips v. Barnhart, 357 F. 3d 1232, 1238 (11th Cir. 2004). The RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his impairment. See Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

If a claimant meets his or her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir.

6

1985)).

## VI. __Discussion__

> ### A. Substantial evidence supports the ALJ's assessment of the expert opinion evidence of Plaintiff's treating physicians, Dr. Walid Freij, M.D., and Dr. Glenton Davis, M.D.

In her brief, Plaintiff argues that the ALJ erred in rejecting the opinions of her treating neurologist, Dr. Walid Freij, M.D., and her treating general physician, Dr. Glenton Davis, M.D., that her physical limitations from multiple sclerosis prevent her from working.[5] (Doc. 13 at 3-12).   The Commissioner counters that substantial evidence supports the ALJ's rejection of Dr. Freij's and Dr. Davis' opinions, as they are unsupported and inconsistent with the objective medical evidence and other record evidence in this case.  Having carefully reviewed the record in this case, the Court agrees that Plaintiff's claim is without merit.

As part of the disability determination process, "the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of treating, examining, and non-examining medical sources." Cook v. Commissioner of Soc. Sec., 2021 U.S. Dist. LEXIS 77456, *4, 2021 WL 1565832, *2 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D.

---

[5] Plaintiff does not challenge the ALJ's findings related to her other severe impairments.  Her challenge focuses on her symptoms caused by multiple sclerosis.

Fla. Apr. 21, 2021)(citing 20 C.F.R. § 416.945(a)(1)). The Social Security Administration revised its regulations regarding the consideration of medical evidence, making those revisions "applicable to all claims filed after March 27, 2017." Id. (citing 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017)). Here, Plaintiff filed his claim after March 27, 2017. (Doc. 14 at 176). Therefore, the revised regulations (*i.e.,* 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c) apply in this action.

The new regulations require that an ALJ "apply the same factors in the consideration of the opinions from all medical sources, rather than afford specific evidentiary weight to certain sources' opinions." Cook, 2021 U.S. Dist. LEXIS 77456, at *4, 2021 WL 1565832, at *2 (citing 20 C.F.R. §§ 404.1520c(a); 416.920c(a)); see also Freyhagen v. Commissioner of Soc. Sec. Admin., 2019 U.S. Dist. LEXIS 165294, *3, 2019 WL 4686800, *2 (M.D. Fla. Sept. 26, 2019)("Under the new regulations, the Commissioner will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)..., including those from [a claimant's] medical sources.")(internal quotation marks omitted)(citing 20 C.F.R. § 404.1520c(a)).

Under the new regulations, as to each medical source, the ALJ must consider: "1) supportability; 2) consistency; 3)

relationship with the claimant;[6] 4) specialization; and 5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding." Cook, 2021 U.S. Dist. LEXIS 77456, at *4, 2021 WL 1565832, at *2 (citing 20 C.F.R. §§ 404.1520c(c); 416.920c(c))(internal quotation marks omitted).

"The amended regulations provide that when the Commissioner evaluates the persuasiveness of medical opinions and prior administrative medical findings, the most important factors are supportability and consistency." Freyhagen., 2019 U.S. Dist. LEXIS 165294, at *3, 2019 WL 4686800, at *2 (citing 20 C.F.R. § 404.1520c(a)). "The Commissioner is not required to articulate how it considered each medical opinion or prior administrative medical finding from one medical source individually." Id. (citing 20 C.F.R. § 404.1520c(b)(1))(internal quotation marks omitted). "Other than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness." Id. (citing Mudge v. Saul, 2019 WL 3412616, *4 (E.D. Mo. July 29, 2019); 20 C.F.R. § 404.1520c(b)(2))

---

[6] "This factor combines consideration of the following issues: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship." Cook, 2021 U.S. Dist. LEXIS 77456, *4, 2021 WL 1565832, at *2 n.2 (citing 20 C.F.R. §§ 404.1520c(c)(3)(i)-(v); 416.920c(c)(3)(i)-(v)).

("We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we considered medical opinions and prior administrative medical findings in [a claimant's] case record.")).

"Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." Cook, 2021 U.S. Dist. LEXIS 77456, *4, 2021 WL 1565832, at *2. "In other words, the ALJ's analysis is directed to whether the medical source's opinion is *supported* by the source's own records and *consistent* with the other evidence of record — familiar concepts within the framework of social security litigation."[7] Id. (emphasis in original).

"Additionally, when there are equally persuasive medical opinions or prior administrative medical findings about the same

---

[7] The regulations provide, in relevant part, that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)," and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinions or prior administrative medical finding(s) will be." Cook, 2021 U.S. Dist. LEXIS 77456, *6, 2021 WL 1565832, at *3 n.4 (quoting 20 C.F.R. §§ 404.1520c(c)(1)–(2); 416.920c(c)(1)–(2)).

issue, both equally well-supported and consistent with the record, but not exactly the same, the Commissioner will articulate how he considered the other most persuasive factors in paragraphs (c)(3) through (c)(5), for those medical opinions." <u>Freyhagen</u>, 2019 U.S. Dist. LEXIS 165294, at *3, 2019 WL 4686800, at *2 (quoting 20 C.F.R. § 404.1520c(b)(3); 20 C.F.R. § 404.1520c(c)(3)-(5)(listing the additional enumerated factors as the medical source's relationship with the claimant, giving consideration to the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and the examining relationship; specialization, noting that the medical opinion of a specialist related to his or her area of specialty may be more persuasive than the medical opinion of a non-specialist; and other factors, including, but not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements).

In the instant case, the ALJ found that Plaintiff has the severe impairments of multiple sclerosis, peripheral neuropathy, degenerative disc disease of the lumbar spine, obstructive sleep apnea, migraine headaches, seizures, morbid obesity, major depressive disorder, and unspecified anxiety disorder. (Doc. 11 at 32). Nevertheless, the ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform a range of sedentary

11

work with the following restrictions: she is limited to occupations that require no more than occasional postural maneuvers, such as balancing, stooping, kneeling, crouching, crawling, or climbing on ramps and stairs, but must avoid occupations that require climbing on ladders, ropes, or scaffolds. Further, she must avoid concentrated prolonged exposure to temperature extremes, vibration, or extreme dampness and humidity, and is limited to occupations, which do not require exposure to hazards such as dangerous machinery and unprotected heights. Additionally, she must avoid exposures to occupations that present noise levels above level 3, which is moderate. She is also limited to unskilled work activity as defined in the Dictionary of Occupational Titles that is low stress, defined as only occasional decision making required and only occasional changes in the work setting. Furthermore, she is limited to occupations, which requires no more than occasional interaction with supervisors, coworkers, and members of the general public. (Id. at 36-37).

The ALJ found that Plaintiff cannot perform her past relevant work as a private duty nurse. However, utilizing the testimony of the vocational expert, the ALJ concluded that Plaintiff can perform work such as a lens inserter, toy stuffer, and addresser (all sedentary and unskilled). (Id. at 43-45). Thus, the ALJ found that Plaintiff is not disabled.

Having reviewed the evidence at length, the Court is satisfied

that substantial evidence supports the ALJ's rejection of Dr. Freij's and Dr. Davis' opinions because they are unsupported and inconsistent with the objective record evidence in this case, and, thus, are unpersuasive. First, the record shows that Dr. Walid Freij, M.D., a neurologist, treated Plaintiff from June 2011 to April 2020. (Id. at 703-53, 1016-19, 1071-89, 1122-1126). During that time, Dr. Freij treated Plaintiff for complaints of extremity pain and weakness, numbness, fatigue, and loss of balance. Dr. Freij diagnosed Plaintiff with multiple sclerosis, for which he prescribed medication, diet, exercise, and avoidance of triggers such as extreme heat, in order to manage her symptoms. (Id. at 703-17, 1071, 1122-25). The record reflects that Dr. Freij's treatment plan was largely successful. His physical examination findings (including the more recent examinations) largely reflect that Plaintiff was "walking normal into examination room;" "sensory is grossly normal;" "moves all extremities symmetrically;" "gait normal;" "gait is stable;" "no involuntary movements;" "motor power 5/5 all over;" "facial appearance: pain free and strong;" "patient is doing well;" "she has not had any recent flare up with her MS;" "denies fatigue;" "denies joint pains or muscle pains;" "denies unsteady gait or weakness;" "denies cold intolerance [or] heat intolerance; denies tingling of the feet or hands; denies tremors; "no edema of the legs;" "muscle tone is normal, showed no atrophy;" "muscle strength 5/5 throughout;" "no

rigidity;" "no abnormal involuntary movements;" denies daytime sleepiness; and denies poor concentration or poor memory. (Id. at 703-29, 1016-18, 1073, 1122).

Despite these largely positive findings, on March 5, 2020, Dr. Freij completed a Medical Source Statement form in which he listed Plaintiff's diagnosis as multiple sclerosis and opined that the number of hours that she could work per day was "none."  In addition, Dr. Freij opined that Plaintiff could stand for no more than thirty minutes at a time for a total of two hours a day; she could not lift more than ten pounds; and she could only occasionally use her arms. (Id. at 1089).

The ALJ rejected these opinions, finding them unsupported, internally inconsistent, and inconsistent with the remaining substantial record evidence in this case.  Specifically, the ALJ noted that Dr. Freij frequently found Plaintiff to have normal reflexes, no ataxia, normal speech, and a normal gait.  The ALJ further noted that Dr. Freij's recommendation that Plaintiff avoid triggers such as extreme heat was accommodated by the RFC.  Having reviewed the record, the evidence detailed herein confirms, as the ALJ found, that Dr. Freij's opinions are unsupported by, and inconsistent with, his own treatment records.

Next, the record shows that Dr. Glenton W. Davis, M.D., a general practitioner, treated Plaintiff from 2010 to 2019 for various medical conditions, including multiple sclerosis. (Id. at

522-56). Dr. Davis monitored Plaintiff's symptoms and medication, and his physical examination findings (including the more recent findings), largely reflect that Plaintiff's condition was controlled, that her extremities were "stable," that she was having "no problems," and she was "doing well." (Id. at 528-56, 1014, 1078-83).

Despite these largely positive findings, on March 20, 2020, Dr. Davis completed a Medical Source Statement form in which he listed Plaintiff's diagnosis as multiple sclerosis and opined that she could not work. Specifically, Dr. Davis opined that Plaintiff could sit or stand/walk for one hour each per day, could lift no more than five pounds, and would be absent from work more than three times in a month. (Id. at 1087). Dr. Davis also opined that Plaintiff's pain would be present to such an extent as to be distracting to the performance of daily activities and tasks and that her medication side effects could be expected to limit her performance of everyday tasks. (Id. at 1088).

The ALJ rejected these opinions, finding them unsupported, internally inconsistent, and inconsistent with the remaining substantial record evidence in this case. (Id. at 42). Having reviewed the record, the evidence detailed herein confirms, as the ALJ found, that Dr. Davis' opinions are unsupported by, and inconsistent with, his own treatment records.

In addition, the record reflects that both Dr. Freij's and

Dr. Davis' opinions are inconsistent with the other substantial record evidence, including the examination findings of other medical providers. Plaintiff's records from the Montgomery Cancer Center dated September 30, 2019, reflect that Plaintiff reported symptoms of "intermittent" leg dragging, for which she occasionally used a cane, but stated that she was "feeling fairly well," that her multiple sclerosis had been "stable," and that she was able to perform her activities of daily living "with minor difficulty." (Id. at 513, 1098). Plaintiff's physical examination findings on that date likewise reflected "gait and station normal," with "full range of motion." (Id. at 1099).

In addition, Plaintiff's records from Vaughn Regional Medical Center dated March 18, 2019, reflect that she presented with complaints of a migraine and a flare up of multiple sclerosis. The treating physician noted that "she ha[d] no difficulty walking," that her extremities were within normal limits, that she had normal range of motion, and that her gait was steady, with no deficits. (Id. at 963-66, 976).

In addition, Plaintiff's treatment records from Dr. Emily Riser, M.D., at the Tanner Center, dated April 2015 to May 2018, reflect normal neurological findings, normal motor function, normal sensation, normal muscle tone, normal gait, ambulation without assistance, and that Plaintiff was doing well on her medication without side effects. (Id. at 434-84).

16

In addition, as the ALJ noted, Plaintiff's diagnostic testing, such as EMG/NCS, and MRIs of her brain, revealed some abnormal findings consistent with a diagnosis of multiple sclerosis but did not indicate significant progression of her condition. (Id. at 41, 446).

Last, the evidence of Plaintiff's activities of daily living shows that she lives with her daughter and takes care of her own personal care needs, with some assistance, prepares simple meals, does light housework, drives short distances, uses the computer, shops, goes to church, and can manage her own finances. (Id. at 66-67, 274-78, 1007).

Based on the foregoing substantial evidence, the Court finds that the ALJ did not err in finding Dr. Freij's and Dr. Davis' opinions unsupported and inconsistent with the substantial record evidence in this case. Accordingly, Plaintiff's claim must fail.

**B. Substantial evidence supports the Residual Functional Capacity ("RFC") for less than the full range of sedentary work with the stated restrictions.**

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's RFC are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments and must be supported by substantial evidence.

17

See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012).   Once the ALJ has determined the claimant's RFC, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence.   See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985).   Plaintiff has failed to meet his burden in this case.

In her brief, Plaintiff argues that the ALJ'S RFC for a range of sedentary work is not supported by substantial evidence because the ALJ failed to credit Dr. Freij's and Dr. Davis' opinions that Plaintiff's symptoms from multiple sclerosis preclude her from working.   (Doc. 13).   Having found that substantial evidence supports the ALJ's rejection of Dr. Freij's and Dr. Davis' expert medical opinions in this case, that argument fails.

In addition, based on the medical evidence detailed above, which will not be repeated here, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff has the RFC to perform a range of sedentary work, with the stated restrictions. Plaintiff's treatment records, on the whole, reflect largely normal and stable examination findings and successful treatment and management of her multiple sclerosis symptoms.   Indeed, Plaintiff has failed to show that any limitations caused by her

multiple sclerosis exceed the RFC and are not accommodated by the RFC and its stated restrictions.  For each of these reasons, Plaintiff's claim must fail.[8]

## VII.  Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED.**

**DONE** this **17th** day of **March, 2022.**

                              /s/ SONJA F. BIVINS
                    **UNITED STATES MAGISTRATE JUDGE**

---

[8] Although Plaintiff has cited evidence in the record which she claims supports a finding that she is disabled, that is, at best, a contention that the record evidence supports a different finding. That is not the standard on review. The issue is not whether there is evidence in the record that would support a different finding, but whether the ALJ's finding is supported by substantial evidence. See Figueroa v. Commissioner of Soc. Sec., 2017 U.S. Dist. LEXIS 181734, *15-16, 2017 WL 4992021, *6-7 (M.D. Fla. Nov. 2, 2017) ("Although Plaintiff cites to certain test results, notes, and physical therapy findings as support for her contention that 'there were objective medical findings that support the doctor's opinions about [her] limitations' . . ., this is, at best, a contention that the record could support a different finding. This is not the standard on review. The issue is not whether a different finding could be supported by substantial evidence, but whether this finding is.").